IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| STANLEY BOCLAIR,<br><br>        Plaintiff,<br><br>v.<br><br>ROB JEFFREYS, FRANK LAWRENCE, LLOYD HANNA, REVA ENGALAGE, and DAVID EVELSIZER,<br><br>        Defendants. | Case No. 21-CV-00022-SPM |

# MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

This matter comes before the Court for consideration of a Motion for Summary Judgment and memorandum in support filed by Defendants Rob Jeffreys, Frank Lawrence, Lloyd Hanna, Reva Engalage, and David Evelsizer (hereinafter "Defendants"). (Doc. 94).[1] For the reasons set forth below, the Court grants the Motion for Summary Judgment.

## BACKGROUND

Plaintiff Stanley Boclair, an inmate in the Illinois Department of Corrections ("IDOC"), filed this action under 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights that occurred at Menard Correctional Center ("Menard"). (Doc. 30). Contextually, the events precipitating the suit happened during June and early

---

[1] Defendant Robert Mueller, the Deputy Director of the Southern Region for the Illinois Department of Corrections, was recently dismissed with prejudice from the suit upon suggestion of death. (Doc. 107).

Page 1 of 13

July of 2019 when the Mississippi River rose beyond its banks and flooded the city of Chester, Illinois and at least some of Menard. Boclair stated that, as a result, the facility went into Level 1 lockdown.[2] (Doc. 94-1, p. 20). "During a Level 1 lockdown, inmates are almost completely restricted from leaving their cells." *Pyles v. Spiller*, 2016 WL 2957865, at *2 (S.D. Ill. May 23, 2016), *aff'd*, 708 F. App'x 279 (7th Cir. 2017). "There is no commissary or yard time, inmate workers do not report to their assignments, and meals are served directly at the inmates' cells." *Id.* "All visits to the health care unit, except emergencies, are cancelled, although the health care unit staff will make rounds and inmates continue to get their medication." *Id.* "Mental health care staff may also make rounds." *Id.*

While Boclair's cell did not flood during this time, he claims that other issues occurred during this time related to illness and sanitation. (Doc. 94-1, p. 31). According to the Amended Complaint, Boclair is alleging (1) retaliation in violation of the First Amendment by IDOC Nurse Engalage, for allegedly denying him medical care between June 10 and July 3, 2019, because he filed a grievance against her; (2) Eighth Amendment deliberate indifference to his serious medical needs for allegedly failing to obtain medical care for his gastrointestinal symptoms between June 5 and July 3, 2019, against Engalage, IDOC Director Jeffreys, and then-Warden Lawrence; and (3) Eighth Amendment cruel and unusual punishment by allegedly causing stomach cramps, diarrhea, vomiting, mild fever, and bloody stool due to serving him rancid milk, moldy bread, and hard boiled eggs on dirty food trays along with failing

---

[2] The Court may take judicial notice of court documents, which are public records, including this information. *See Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994).

to provide him with safe drinking water between June 3 and July 8, 2019, against Jeffreys, Lawrence, Dietary Manager Hanna, and Major Evelsizer, a corrections officer, for ignoring his written and verbal requests for medical care. (Doc. 30).

### RELEVANT FACTS AND ALLEGATIONS

Based on the evidence in the record, including testimony under oath for depositions, the following facts do not appear to be actually contested amongst the parties to this suit.[3]

Boclair alleged Engalage retaliated against him from June 10 to July 3, 2019 by denying medical treatment because he filed a grievance against her.

Boclair stated that if he needed or wanted medical care at Menard, he could have told the certified medical technician, the nurse making rounds, write a sick call slip, tell a gallery officer, his psychiatrist, or anyone who would listen. (Doc. 94-1, p. 6-8). If he had a medical issue, he would tell any employee or any staff member. (*Id.* at 11). Boclair did not know who created the list of which individuals were going to be seen on nurse sick call or seen by a physician. (*Id.* at 9).

While Boclair stated that Engalage walked rounds and sometimes took sick call slips, he did not know who in the healthcare unit reviewed the sick call slips. (Doc. 94-1, p. 10). Boclair saw nurses who administered his medications twice a day and could tell each of them if he had medical problems. (*Id.* at 6). The June and July 2021 Medical Administration Records ("MARs") indicated that different nurses, including Engalage, administered Boclair's medicines. (Doc. 94-2, pp. 2-3).

---

[3] In some cases, Boclair disputed these facts in his response to the Motion despite testimonial and record evidence to the contrary.

Boclair speculated that Engalage destroyed or did not turn in any sick call slips for him because he was upset previously about a TB test and wrote a grievance. (Doc. 94-1, p. 17). Boclair surmised that Engalage retaliated against him based on his assumption that he would have gotten treatment after submitting sick call slips. (*Id.* at 18). Boclair and Engalage never talked about the grievance or the TB test incident that led him filing the grievance. (*Id.* at 15). Boclair never asked Engalage why he was not being scheduled on the nurse sick call and had no personal knowledge of whether Engalage gave his sick call requests to anyone. (*Id.* at 20-21).

Boclair alleged an Eighth Amendment deliberate indifference claim against Engalage, Jeffreys, and Lawrence for failing to assist in obtaining medical care for his gastrointestinal issues. Boclair also alleged an Eighth Amendment cruel and unusual punishment claim against Jeffreys, Lawrence, Hanna, and Major Evelsizer for causing stomach cramps, diarrhea, vomiting, mild fever, and bloody stool from food and water-related problems.

Boclair's gastrointestinal issues during this time were sporadic and he never spoke to Jeffreys, Mueller, or Lawrence about his illness. (Doc. 94-1, pp. 22-23, 31). He provided no evidence of the water failing any tests, only generalized information regarding water contamination during flooding. (Doc. 94-1, p. 39; Doc. 30, pp. 12-14).

Boclair admitted he did not inform Jeffreys about any food or water issues and any responsibility Jeffreys and Hanna had were due to their supervisory roles. (Doc. 94-1, p. 33). Boclair never spoke with Jeffreys, Mueller, or Lawrence about the food and water issues when they visited his cell. (*Id.* at 34). He also did not have any face-to-face conversations with Defendant Hanna about the food. (*Id.* at 35).

Boclair stated that he sent a "kite" and a grievance regarding the food, but did not produce evidence to support that claim. (Doc. 94-1, p. 35, Doc. 30). He has no evidence of any ongoing physical problems caused from any issues with the food or water he ingested at Menard during June and July 2019. (Doc. 94-1, p. 37). No medical professional ever told Boclair that the water or food at Menard caused his illnesses and he only produced generalized information regarding food and water contamination. (Doc. 94-1, p. 38; Doc. 30, pp. 12-14).

## LEGAL STANDARD

Summary judgment is the moment in a lawsuit where a party lays its proverbial cards on the table, showing what evidence it possesses to convince a trier of fact to agree with its version of events. *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted)). Summary judgment is only appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014) (quoting FED. R. CIV. P. 56(a)). That "burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere conclusory allegations and offer specific facts showing that there is a genuine issue of fact for trial. FED. R. CIV. P. 56(e); *see Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *see also Celotex*, 477 U.S. at 232-24.

In determining the existence of a genuine dispute of material fact, the Court construes all facts in the light most favorable to the nonmoving party and draws all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Spath v. Hayes Wheels Int'l-Indiana, Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). While the Court must view the evidence and draw all reasonable inferences in favor of the opposing party, "[i]nferences and opinions must be grounded on more than flights of fancy, speculations, hunches, intuitions, or rumors[.]" *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *Rand v. CF Industries, Inc.*, 42 F.3d 1139, 1146 (7th Cir. 1994); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 323. Furthermore, when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Henning v. O'Leary,* 477 F.3d 492, 496 (7th Cir. 2007).

## DISCUSSION

This case involves a retaliation claim under the First Amendment for denial of medical care and two Eighth Amendment claims for deliberate indifference to a serious medical need for denial of medical care for gastrointestinal issues and cruel and unusual punishment for the food and water-related problems that caused his illness.

I.  **First Amendment Retaliation Claim**

To prevail on a First Amendment retaliation claim, Boclair must show that: (1) he engaged in protected First Amendment activity; (2) he suffered a deprivation that would likely deter future First Amendment activity; and (3) the protected activity was a motivating factor in the Engalage's decision to take the allegedly retaliatory action. *Taylor v. Van Lanen*, 27 F.4th 1280, 1284 (7th Cir. 2022). If he does so, the burden shifts to Engalage to show that the deprivation would have occurred even if he had not engaged in protected activity. *Manuel v. Nalley*, 966 F.3d 668, 680 (7th Cir. 2020).

Here, Boclair alleges that he had filed a grievance against Engalage in the past, and she refused to get medical care for his illness in June and July 2019 in retaliation for that grievance. Regarding the first element, it is well established that a prisoner's ability to file complaints is protected by the First Amendment. *See Hughes v. Scott*, 816 F.3d 955, 956 (7th Cir. 2016). As for the second element, Boclair alleged suffering a deprivation—denial of medical care—that, objectively would likely dissuade a person of ordinary firmness from exercising further First Amendment activity.

Concerning the third element, "[t]he motivating factor amounts to a causal link between the activity and the unlawful retaliation." *Manuel*, 966 F.3d at 680. This element may be proven by circumstantial evidence, which may include suspicious timing; ambiguous behavior; evidence that similarly situated people were treated differently; and evidence that the decisionmaker offered a pretextual reason for an allegedly retaliatory action. *Id.*; *Hobgood v. Ill. Gaming Bd.*, 731 F.3d 635, 643–44

(7th Cir. 2013). Nonetheless, if there is no evidence that the defendants knew of the protected speech, the speech cannot prove a motivation to retaliate. *See Stagman v. Ryan*, 176 F.3d 986, 999–1000 (7th Cir. 1999). Additionally, suspicious timing by itself is rarely sufficient to create a triable issue because it may be just that—suspicious—and suspicion without more is not enough to get past summary judgment. *See Manuel*, 966 F.3d at 680.

In this case, Boclair speculated that because he did not receive medical treatment, Engalage retaliated against him for the grievance even though he admitted that the facility was on a level one lockdown and services, including medical care, were curtailed at that time. (Doc. 106, p. 15). Boclair showed no causal connection between an alleged denial of medical care and his grievance filed about Engalage's conduct. He does not have any evidence that Engalage knew about his grievance and never spoke to Engalage about the issue. His argument is based on suspicious timing only. In his response to the Motion for Summary Judgment, he referred to Engalage as the "gatekeeper" for sick call slips, but provided no evidence to back up this assertion. (Doc. 106, p. 15). "*Argument* is insufficient to avoid summary judgment; the nonmoving party needs to come forward with *evidence*." *Beatty v. Olin Corp.*, 693 F.3d 750, 754 (7th Cir. 2012) (citing *Outlaw v. Newkirk*, 259 F.3d 833, 839 n. 2 (7th Cir. 2001); *Scherer v. Rockwell Int'l Corp.*, 975 F.2d 356, 361 (7th Cir. 1992)).

Simply put, Boclair has not developed any retaliation claim in his response in opposition to summary judgment and thus, has failed to meet his burden.

## II. Eighth Amendment Claims

The Eighth Amendment prohibits cruel and unusual punishment and deliberate indifference to the "serious medical needs of a prisoner [which] constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution." *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009) (citation omitted). Claims for both cruel and unusual punishment and deliberate indifference have an objective and a subjective component. *See Estelle v. Gamble*, 429 U.S. 97 (1976); *see also Smith v. Dart*, 803 F.3d 304, 309 (7th Cir. 2015).

Objectively, for cruel and unusual punishment, Boclair must establish that that the conditions in the prison denied him "the minimal civilized measure of life's necessities," creating an excessive risk to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Prison conditions that deprive inmates of basic human needs – food, medical care, sanitation, or physical safety – may violate the Eighth Amendment. *See Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). For deliberate indifference, Boclair must establish that he suffered from an objectively, sufficiently serious medical condition. *Cesal v. Moats,* 851 F.3d 714, 721 (7th Cir. 2017).

Looking at cruel and unusual punishment under the standard, Boclair states that, in combination, the deprivation of adequate food, water, and medical care met the objective standard for cruel and unusual punishment, but he did not elaborate on the point and predominately focused on the subjective standard establishing a defendant's culpable state of mind. "A party seeking to defeat a motion for summary judgment is required to 'wheel out all its artillery to defeat it'" *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996) (citations

omitted). "Failure to respond to an argument results in waiver." *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010). As a result, Boclair waived his cruel and unusual punishment claim regarding food and water-related problems that caused his gastrointestinal issues. Even so, considering the record regarding conditions of confinement as a whole and taking into account their severity and duration, Boclair failed to establish an unconstitutional conditions of confinement claim under the Eighth Amendment. According to his deposition, has no evidence of any ongoing physical problems caused from issues with food or water he ingested during June and July 2019 and no medical professional ever told him that the water or food at Menard caused his illnesses. Boclair merely produced notarized affidavits making such claims after his deposition and, from a scientific standpoint, only produced handwritten generalized information regarding food and water contamination from the Centers for Disease Control and Prevention website without citation. *See Dunn v. Menard, Inc.*, 880 F.3d 899, 910 (7th Cir. 2018) (generally, parties cannot create an issue of fact by submitting affidavits whose conclusions contradict prior deposition testimony).

Viewing deliberate indifference under the standard, Boclair did little, if anything, to argue that he suffered from an objectively, sufficiently serious medical condition. Because of this, Boclair also waived his deliberate indifference claim regarding treatment of his gastrointestinal issues. That said, the record and caselaw would have made the requirement a tough hill to climb. Boclair admitted in his deposition and did not deny in his response that his gastrointestinal issues were sporadic in June and July 2019. While district courts within the Seventh Circuit have

held that a plaintiff that presented evidence of complaining about stomach issues sufficiently alleged an objectively serious medical condition, generally, the facts in those cases show that plaintiffs complained repeatedly over months. *See McCoy v. Wexford Health Sources, Inc.*, 2018 WL 4563076, at *4 (N.D. Ill. Sept. 24, 2018); *see also McIntosh v. Bowens*, No. 18-CV-1610, 2021 WL 3524176, at *4 (E.D. Wis. July 6, 2021).

Once an objectively serious condition has been established, the analysis then turns to whether the Defendants had "a sufficiently culpable state of mind" and were deliberately indifferent "to adverse conditions that deny 'the minimal civilized measure of life's necessities'" or to a substantial risk to Boclair's health. *Farmer*, 511 U.S. at 834, 114 S.Ct. 1970; *see also Cesal*, 851 F.3d at 721. It is well-settled that mere negligence is not enough to establish a Defendant's deliberate indifference. *See Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986). In fact, even gross negligence is insufficient. *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012). Instead, deliberate indifference is comparable to criminal recklessness. *Thomas v. Blackard,* 2 F.4th 716 (7th Cir. 2021) (citing *King*, 680 F.3d at 1018). Nothing in the record related to Defendants indicates conduct so dangerous that the deliberate nature of their actions can be inferred. While that is difficult bar to meet, that is the standard and it is not met here. Boclair has failed to meet his burden.

### III. *Qualified Immunity*

Defendants claim that they are also entitled to summary judgment under a theory of qualified immunity. Governmental officials performing discretionary functions are generally shielded from liability or civil damages insofar as their

conduct does not violate a "clearly established" statutory or constitutional right. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

A state official is protected by qualified immunity unless Boclair shows "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Kemp v. Liebel*, 877 F.3d 346, 350-51 (7th Cir. 2017) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). Boclair bears the burden of producing specific factual support for his claim in order to overcome Defendants' qualified immunity defense. *See Ewell v. Toney*, 853 F.3d 911, 919 (7th Cir. 2017).

In Engalage's case on First Amendment retaliation, Boclair produced no such factual support. As a result, Engalage is immune from suit on that claim. As for the other claims against Defendants, the undisputed facts indicate that Jeffreys, Mueller, Lawrence, and Lawrence had no knowledge of Boclair's illness, food, or water claims and Engalage and Evelsizer acted upon Boclair's complaints. Furthermore, to be "'clearly established,' a right must be defined so clearly that every reasonable official would have understood that what he was doing violated that right." *Dibble v. Quinn*, 793 F.3d 803, 808 (7th Cir. 2015) (citing *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). There need not be a case directly on point, but "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). The right must be established "not as a broad general proposition." *Reichle*, 566 U.S. at 664. Instead, it must be "particularized" such that the "contours" of it are clear to a reasonable official. *Id*. That is, "existing precedent must have placed the statutory or constitutional question beyond debate." *Carroll v.*

*Carmen*, 135 S.Ct. 348, 350 (2014). Related to the Eight Amendment issues here, that level of undebatable precedent does not exist.

## CONCLUSION

Accordingly, the Court **GRANTS** the Motion for Summary Judgment. (Doc. 94). Plaintiff Stanley Boclair's claims against Defendants Rob Jeffreys, Frank Lawrence, Lloyd Hanna, Reva Engalage, and David Evelsizer are **DISMISSED** and this action is **DISMISSED** with prejudice. The Court **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED:   July 16, 2024**

**s/ *Stephen P. McGlynn*** 
**STEPHEN P. McGLYNN**
**U.S. District Judge**
